# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DARRYL R. CHAMBERS, | ) |
| | ) |
| Plaintiff, | )  4:19CV3047 |
| | ) |
| v. | ) |
| | ) |
| DELA CRUZ, Case Manager, Tecumseh State Prison, SCOTT FRAKES, Director, COLEMAN, Case Manager, Nebraska State Prison, AMANDA CHADWICK, Unit Manager, ZAMORA, Case Manager, CROWDER, Case Manager, CATHY SHEIR, Warden, SHERWOOD, Case Manager, All employed at Lincoln Correctional Center, HANSEN, Warden, ATHENA THOMAS, Unit Administrator, HARDY, Property Officer, and PAM HILLMAN, Discipline Chair Person, All Employed at Tecumseh Correctional Center, Individually and in their Official Capacities, | ) **MEMORANDUM AND ORDER** |
| Defendants. | ) |

      Plaintiff, now an inmate at the Lincoln Correctional Center, brings this 42 U.S.C. § 1983 suit against state prison officials requesting declaratory, injunctive, and monetary relief for injuries he allegedly suffered when three inmates assaulted him at the Tecumseh State Correctional Institution. The court has granted Plaintiff permission to proceed in forma pauperis (Filing No. 9), and the court now conducts an initial review of the Complaint (Filing No. 1) to determine whether summary dismissal is appropriate under 28 U.S.C. §§ 1915(e) and 1915A.

# I. SUMMARY OF COMPLAINT

Plaintiff sues Scott Frakes, Director of the Nebraska Department of Correctional Services ("NDCS"), as well as several managers, wardens, and administrators at the Nebraska State Penitentiary ("NSP"), the Lincoln Correctional Center ("LCC"), and the Tecumseh State Correctional Institution ("TSCI") in their individual and official capacities for injuries suffered after Plaintiff was assaulted by three inmates at the TSCI. Plaintiff's Complaint describes his repeated transfers among NDCS facilities and his verbal and written correspondence with facility employees warning them that he would be unsafe at some of those facilities due to testimony he gave against another inmate who "was given the death penalty for what [Plaintiff] said about" the inmate. (Filing No. 1 at CM/ECF p. 3.)

Plaintiff alleges that on March 11, 2016, he was sent from the Douglas County Jail to the NDCS Diagnostic and Evaluation Center ("D&E"), where he told an unidentified intake officer that he "had problems" with two specifically named inmates ("Inmate R.E." and "Inmate D.S."[1]). The D&E intake officer allegedly put this information "into the computer." (Filing No. 1 at CM/ECF p. 3.)

In November 2016, Plaintiff was transferred to the NSP. When Plaintiff arrived there, he told Defendant Case Manager Coleman that inmates who knew Inmate R.E. were threatening him because Plaintiff testified against Inmate R.E., who then received the death penalty. Plaintiff was placed in protective custody at the NSP until he was moved to the LCC.

When Plaintiff arrived at the LCC, he informed Defendants Case Manager Zamora and Unit Manager Chadwick that Inmates R.E. and D.S. were on his "keep separate" list. Plaintiff spent two months in protective custody at the LCC followed by eight months in general population. When Plaintiff was informed he was being

---

[1]The court has chosen not to use the inmates' full names.

moved to the NSP, he spoke to Defendant Chadwick, who told him she "could not do anything about this." Plaintiff told Chadwick "people are trying to hurt me over there," after which Chadwick allegedly said, "its not her problem" and Plaintiff should "tell the staff at the prison once [Plaintiff] get[s] there." (Filing No. 1 at CM/ECF p. 3.)

When Plaintiff arrived at the NSP, he talked with Defendant Coleman and reminded him about "the people I have trouble with and that I wanted protective custody for my safety." (Filing No. 1 at CM/ECF p. 4.) Coleman allegedly then told Plaintiff that he would instead be sent to the TSCI, after which Plaintiff "told him again that my life would be at risk if I was sent there because [Inmate R.E.] is there and it[']s in the computer that I have a keep separate on [Inmate R.E.]." (*Id*.) Defendant Coleman then told Plaintiff he would be returning to the LCC and placed in protective custody.

On June 29, 2018, Plaintiff was told he would be transferred from the LCC to the TSCI. Plaintiff informed Defendant Case Managers Crowder and Sherwood that he could not go to the TSCI "because [Inmates R.E. and D.S. were] there and I fear for my safety and this is all on the computer." (Filing No. 1 at CM/ECF p. 4.) Nevertheless, Plaintiff was sent to the TSCI.

When Plaintiff arrived at the TSCI, he requested protective custody "because I didn't fell [sic] safe." (*Id*.) Defendant Case Manager Dela Cruz told Plaintiff that there was no room in protective custody and that Plaintiff had not been housed in protective custody at the LCC. After Plaintiff stated that he "didn't fell [sic] safe on the yard at Tecumseh," Dela Cruz placed him "in Special Management Unit on immediate Segregation." (*Id*.) On July 1, 2018, Plaintiff submitted an Inmate Interview Request to Defendant Warden Hansen asking why he had been placed in the TSCI when "there was two people on my central monitor." (*Id*. at CM/ECF pp. 4, 9.) Warden Hansen replied that he was "working on a suitable living location for you including a transfer back to LCC." (*Id*.) On July 3, 2018, Plaintiff submitted another

3

Inmate Interview Request to Warden Hansen, stating, "I am not safe here!" and wondering "why L.C.C. keep[s] trying to put me on this yard. I don't cause any problems. I only had 1 write up in 2 years. I just want to do my time and I was doing that there." (Filing No. 1 at CM/ECF p. 10.) Warden Hansen responded, "There is no reason why you can't be in general population at TSCI. [Inmate R.E.] is on Death Row and [Inmate D.S.] is on LTRH." (*Id.*)

On July 5, 2018, Plaintiff filed an Inmate Interview Request with Defendant Athena Thomas, TSCI Unit Administrator, alerting her that his "life is in grave danger" by being housed in the same facility as Inmates R.E. and D.S. and that "I have people on this gallery say word is out I am here and people are waiting for me on the yard, and P.C." (Filing No. 1 at CM/ECF p. 11.) Thomas responded, "You have no Central Monitoring concerns in TSCI-GP so You are recommended to go to GP." (*Id.*) On July 7, 2018, Plaintiff wrote Defendant Dela Cruz stating, "I am not safe here" and "I can't go to a p.c. yard or G.P. yard here." (Filing No. 1 at CM/ECF p. 12.) On July 8, 2018, Plaintiff again wrote to Defendant Hansen requesting that he be allowed to "just stay[] in the hole because [he] felt safe," stating that he did not want to be assigned to the "P.C. yard," and reminding Hansen that he "took the stand in the [R.E.] trial, everyone knows I am here and I put him on death row!" (Filing No. 1 at CM/ECF pp. 5, 13.)

On July 12, 2018, Sergeant Ballue in the Special Management Unit at the TSCI ordered Plaintiff to move to another housing unit, but Plaintiff refused to do so "because of my safety." (Filing No. 1 at CM/ECF pp. 5, 14.) On July 17, 2018, Plaintiff submitted an Inmate Interview Request to Warden Hansen indicating that while he may be located in another area of the TSCI than Inmates R.E. and D.S., "other people know about these things, the word is out I am here and people are waiting for me. I would rather not go out there." (Filing No. 1 at CM/ECF p. 16.) Warden Hansen replied that Inmate D.S. "will be transferred at some point. If you have specific issues with specific inmates, notify your unit staff so an investigation can be conducted." (*Id.*)

On July 19, 2018, Plaintiff was again asked to move to another TSCI housing unit, which Plaintiff refused "because of my safety." (Filing No. 1 at CM/ECF pp. 5, 17-18.) The next day, Plaintiff was again instructed to change housing units. Plaintiff complied and was assaulted by three inmates within less than five minutes of his arrival. His property was also stolen. Plaintiff was then returned to the Special Management Unit, where he sought medical attention for severe back and neck pain and headaches. He received medical attention three days later, on July 23, 2018. (Filing No. 1 at CM/ECF p. 21.) On July 24, 2018, Plaintiff sent correspondence to NDCS Chief of Operations Diane Sabatka-Rine requesting to be transferred from the TSCI to the LCC due to safety concerns.

With assistance from the Ombudsman, Plaintiff was transferred back to the LCC on July 27, 2018, where he sought medical treatment on July 28 and August 9, 2018. (Filing No. 1 at CM/ECF pp. 22, 30, 31 (August 9, 2018, Inmate Interview Request stating, "I been trying to be seen all this time. . . . I am in a lot of pain.").) Plaintiff wrote LCC Deputy Warden Cathy Sheair on August 9, 2018, asking why he had been transferred to the TSCI when "it was in the computer for me not to be there with two other people." (Filing No. 1 at CM/ECF p. 23.) Sheair responded, "The one is on death row and you wouldn't have any contact with them. The other person is listed as separate by housing unit." (*Id*.) On August 10, 2018, Sabatka-Rine responded to Plaintiff's July 24 letter, stating, among other things, "it was determined that appropriate separation could be maintained with your assignment to TSCI general population" and:

> There is no information available to indicate that the individuals who assaulted you on July 20, 2018, were in anyway [sic] connected to the individuals identified on your central monitoring or the specific security threat groups you identified during the completion of your protective custody investigations. As such, it was unforeseeable that members of this particular security threat group would assault you. As you have since been transferred to LCC, this matter is closed and will not be further addressed.

5

(Filing No. 1 at CM/ECF p. 24.) Plaintiff filed an unsuccessful grievance[2] and appeal[3] at the LCC regarding the above series of events, as well as a claim for $909.43 in personal property that was allegedly stolen from him after the assault. (Filing No. 1 at CM/ECF pp. 25-27.)

Plaintiff complains that he still experiences back pain from the assault and his prescribed pain medication is not working. (Filing No. 1 at CM/ECF p. 6.)

## II. LEGAL STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads

---

[2]In denying Plaintiff's grievance, the NDCS advised him to contact the Nebraska State Patrol if he wished to pursue charges against the inmates who assaulted him and to "[p]lease continue working with your assigned Unit staff." (Filing No. 1 at CM/ECF p. 25.)

[3]In denying Plaintiff's appeal, the NDCS stated that Plaintiff's "central monitoring" was reviewed before Plaintiff's transfer to the TSCI was approved and that neither Inmates R.E. nor D.S. was in the TSCI general population at the time of Plaintiff's transfer. (Filing No. 1 at CM/ECF p. 26.)

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff here alleges a federal constitutional claim. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III.  DISCUSSION

**A. Eighth Amendment Claim**

Plaintiff asserts a 42 U.S.C. § 1983 claim under the Eighth Amendment. "The Eighth Amendment requires prison officials to take reasonable measures to guarantee inmate safety by protecting them from attacks by other prisoners." *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (internal quotation marks and citations omitted). However, "a constitutional claim does not lie every time one inmate attacks another. Rather, prison officials violate the Eighth Amendment only when they exhibit a deliberate or callous indifference to an inmate's safety." *Id.* (internal quotation marks and citations omitted).

To prevail on a failure-to-protect claim, as is alleged here, an inmate must make two showings: "[1] an objective component, [that] there was a substantial risk of harm[4] to the inmate, and [2] a subjective component, [that] the prison official was deliberately indifferent to that risk." *Id.* (internal quotation marks and citations omitted) (footnote added). The subjective component has two parts. First, the plaintiff must "demonstrate that [the defendant] knew of the substantial risk of serious harm to [the plaintiff]." *Blair v. Bowersox*, No. 18-1486, 2019 WL 3046826, at *4 (8th Cir. July 12, 2019) (internal quotation marks and citation omitted).[5] Second, the plaintiff must prove that the defendant "deliberately disregarded that risk" by establishing that the defendant knew his "conduct was inappropriate in light of the risk." *Id.* (internal quotation marks and citation omitted).[6]

---

[4]"Assault at the hands of fellow inmates . . . is a 'serious harm.'" *Jensen v. Clarke*, 94 F.3d 1191, 1198 (8th Cir. 1996). Further, a single incident of violence can support a failure-to-protect claim. *Schofield v. Hopkins*, 491 F. App'x 772, 774 (8th Cir. 2012) (unpublished) (citing *Young v. Selk*, 508 F.3d 868, 870-73 (8th Cir. 2007) (discussing potential for substantial risk where inmate told officials of cellmate's threats, requested to be removed from cell immediately, said it was an emergency, and was subsequently attacked)).

[5]Under the first part of the subjective component, the plaintiff need not prove that the defendant had "actual knowledge of the risk of harm." *Blair*, 2019 WL 3046826, at *4. Rather, the plaintiff can establish that "the risk was obvious enough to support the inference that [the defendant] knew the risk existed." *Id.* "However, constructive knowledge, or the 'should-have-known' standard, is not sufficient to support a finding of deliberate indifference. The hurdle is higher: [the plaintiff] must instead show that [the defendant] had been exposed to information concerning the risk and thus must have known about it." *Id.* (internal quotation marks and citations omitted).

[6]This standard is "akin to that of criminal recklessness," *id.*—that is:

"the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" before acting—or failing to act—with a conscious disregard for the risk. [*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).] "In contrast to negligence, deliberate indifference requires a highly culpable

Here, Plaintiff alleges facts indicating that the Defendants were aware through Plaintiff's written and verbal grievances that he was at risk of being assaulted at the TSCI, yet he was sent there anyway and was placed in a cell where he was accessible to inmates who had threatened to assault him in retaliation for Plaintiff's testimony against death-row inmate R.E. For purposes of initial review, Plaintiff has plausibly alleged an Eighth Amendment failure-to-protect claim, and this claim shall be permitted to go forward. *See Blackmon v. Lombardi*, 527 F. App'x 583, 584 (8th Cir. 2013) (unpublished) (plaintiff sufficiently stated failure-to-protect claim by alleging that guard, who had reputation for violence against inmates, attempted to attack plaintiff and that defendants learned of threat to plaintiff's safety by reading plaintiff's grievances about it, but did nothing); *Krein v. Norris*, 309 F.3d 487, 491 (8th Cir. 2002) ("in order to have a viable deliberate indifference claim, a plaintiff is not required to allege and prove that the defendant or defendants specifically knew about or anticipated the precise source of the harm . . . .").

## B. Official-Capacity Claims

Plaintiff sues the Defendants—all of whom are prison officials at NDCS facilities—in both their individual and official capacities for declaratory, injunctive, and monetary relief. A suit may be brought under 42 U.S.C. § 1983 only against a "person" who acted under color of state law. Generally, a state, its agencies and instrumentalities, and its employees in their official capacities are not "persons" "as that term is used in § 1983, and [are] not suable under the statute, regardless of the forum where the suit is maintained." *Hilton v. South Carolina Pub. Railways Comm'n*, 502 U.S. 197, 200-01 (1991); *see also McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir.

---

> state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (internal quotation omitted). We measure the official's state of mind according to his knowledge at the time of the incident, without the benefit of hindsight. *Id.*

*Blair*, 2019 WL 3046826, at *4.

2008) (states, arms of the state, and state officials acting in their official capacities are not subject to suit under § 1983). However, state officials sued in their official capacities for injunctive relief are persons under § 1983, because official capacity actions for prospective relief are not treated as actions against the State. *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

In addition, the Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and state employees sued in their official capacities. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., Egerdahl*, 72 F.3d at 619; *Dover Elevator Co.*, 64 F.3d at 446-47; *Nevels v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). However, under the doctrine of *Ex parte Young*, a state's Eleventh Amendment immunity does not bar a suit against state officials when the plaintiff seeks only prospective relief for ongoing violations of federal rights. *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635 (2002); *Ex Parte Young*, 209 U.S. 123 (1908).

As far as Plaintiff's claim for declaratory relief is concerned, claims for a declaration of past constitutional violations against the State, its agencies, and state employees in their official capacities are barred by Eleventh Amendment immunity. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (*Ex Parte Young* exception to Eleventh Amendment immunity "applies only to prospective relief, [and] does not permit judgments against state officers declaring that they violated federal law in the past"); *Jacobson v. Bruning*, No. 4:06-CV-3166, 2007 WL 1362638, at *2 (D. Neb. Apr. 24, 2007) ("a declaratory judgment establishing *past* liability of the State is . . . forbidden by the Eleventh Amendment" (italics in original) (citing *Verizon Maryland, Inc.*, 535 U.S. at 646)); *Hansen v.*

*Vampola*, No. 4:07CV3074, 2007 WL 1362689, at *2 (D. Neb. Apr. 16, 2007) ("A declaratory judgment establishing only the **past liability** of the state is forbidden by the state's sovereign immunity preserved by the Eleventh Amendment to the Constitution." (bold in original)).

Accordingly, Plaintiff's claims against Defendants in their official capacities for monetary damages and declaratory relief will be dismissed, but Plaintiff's claims for prospective injunctive relief for ongoing violations of federal rights will be permitted to proceed. *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 530 (8th Cir. 2005) ("A federal court may therefore issue an injunction to prevent state officials from violating the Constitution without running afoul of the Eleventh Amendment.").

## C. Lack of Allegations Against Defendants Hardy & Hillman

Plaintiff's Complaint and the attached grievances make no factual allegations against Defendants Property Officer Hardy and Discipline Chairperson Pam Hillman indicating that they were personally involved in, or directly responsible for, the conduct underlying Plaintiff's claim. The only references to these Defendants appear in Plaintiff's Tort & Miscellaneous Claim Form, which states that Defendant Hardy inventoried Plaintiff's property when he arrived at TSCI, Defendant Hillman saw a video of inmates taking Plaintiff's property, and Defendant Hillman advised Plaintiff to file a grievance and tort claim to recover such property. (Filing No. 1 at CM/ECF p. 27.)

The court will give Plaintiff leave to file an Amended Complaint to identify how Defendants Hardy and Hillman were actually involved in the alleged constitutional violation, clearly explaining what these Defendants did to him, when they did it, how their actions harmed him, and what specific legal right Plaintiff believes these Defendants violated. When amending his Complaint, Plaintiff should be mindful that the court will dismiss any claims asserted against Defendants who are not alleged to

11

have any personal involvement in the alleged constitutional violation. *See Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999) (complaint was properly dismissed because plaintiff failed to allege facts supporting any individual defendant's personal involvement or responsibility for violations); *see also Ashcroft*, 556 U.S. at 679 (plaintiff must plead factual content that allows court to draw reasonable inference that defendant is liable for alleged misconduct).

## IV. CONCLUSION

For the reasons discussed above, Plaintiff has plausibly alleged an Eighth Amendment failure-to-protect claim against the Defendants in their individual capacities, and this claim may go forward. Plaintiff's claims against Defendants in their official capacities for monetary damages and declaratory relief will be dismissed, but Plaintiff's claims for prospective injunctive relief for ongoing violations of federal rights will be permitted to proceed. On its own motion, the court will grant Plaintiff leave to file an Amended Complaint that states a claim upon which relief may be granted as to Defendants Hardy and Hillman. In order for Plaintiff's claims to proceed against Defendants Hardy and Hillman, he must file an Amended Complaint that alleges truthful facts establishing that these Defendants were personally involved in, or directly responsible for, the conduct underlying Plaintiff's claim. Plaintiff should clearly explain what Defendants Hardy and Hillman did to him, when they did it, how their actions harmed him, and what specific legal right Plaintiff believes these Defendants violated. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this action as to Defendants Hardy and Hillman without further notice to Plaintiff.

IT IS ORDERED:

1. With the exception of Defendants Hardy and Hillman, Plaintiff has plausibly alleged a 42 U.S.C. § 1983 Eighth Amendment failure-to-protect claim against all Defendants in their individual capacities, and this claim may go forward;

2. Plaintiff's claims against Defendants in their official capacities for monetary damages and declaratory relief are dismissed for failure to state a claim under 42 U.S.C. § 1983 and because of Eleventh Amendment immunity, but Plaintiff's claims for prospective injunctive relief for ongoing violations of federal rights will be permitted to proceed;

3. Plaintiff shall file an amended complaint by August 22, 2019, that states a claim upon which relief may be granted as to Defendants Hardy and Hillman. Failure to file an amended complaint within the time specified by the court will result in the court dismissing Defendants Hardy and Hillman from this action without further notice to Plaintiff;

4. Service of process will be ordered after Plaintiff has filed an amended complaint and after the court has conducted an initial review of the amended complaint;

5. Plaintiff is advised that the court intends to appoint counsel to represent him in this action; and

6. The clerk of the court is directed to set a pro se case management deadline using the following text—August 22, 2019: amended complaint due.

DATED this 19th day of July, 2019.

BY THE COURT:

s/ *Richard G. Kopf*
Senior United States District Judge