IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DARRYL R. CHAMBERS,<br><br>                    Plaintiff,<br><br>         vs.<br><br>DELA CRUZ, Case Manager, Tecumseh State Prison, All employed at Lincoln Correctional Center; SCOTT FRAKES, Director, All employed at Lincoln Correctional Center; COLEMAN, Case Manager, Nebraska State Penitentiary, All employed at Lincoln Correctional Center; AMANDA CHADWICK, Unit Manager; ZAMORA, Case Manager; CROWDER, Case Manager, All employed at Lincoln Correctional Center; CATHY SHEAIR, Warden, All employed at Lincoln Correctional Center; SHERWOOD, Case Manager, All employed at Lincoln Correctional Center; ATHENA THOMAS, Unit Administrator, All employed at Tecumseh Correctional Center; HARDY, Corporal, All employed at Tecumseh Correctional Center; PAM HILLMAN, All Employed at Tecumseh Correctional Center; BRAD HANSEN, Warden, All employed at Tecumseh Correctional Center; HARBANS S. DEOL, D.O.; and JOHN DOE NOS. 1-5,<br><br>                    Defendants. | **4:19-CV-3047**<br><br><br>**MEMORANDUM AND ORDER** |

## I.    INTRODUCTION

This matter is before the Court on Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Filing 50. For the reasons stated below, Defendants' motion is granted in part and denied in part as follows: all claims against Defendants in their official capacities for monetary damages and retroactive declaratory relief are dismissed; all claims against Defendants in their individual capacities for injunctive relief are dismissed; Plaintiff's

1

claim under 42 U.S.C. § 1983 asserting a violation of the Eighth Amendment based on inadequate medical treatment is dismissed as to defendants Deol, Frakes, Hansen, Thomas, and Dela Cruz; Chambers's § 1983 claim asserting a violation of the Eighth Amendment based on his placement in isolation is dismissed; and Plaintiff's § 1983 claim asserting due-process violations based on his receiving misconduct reports and being deprived of property is dismissed. All other claims survive.

## II.  BACKGROUND

Plaintiff, Darryl R. Chambers, is an inmate in the custody of the Nebraska Department of Correctional Services ("NDCS"). Filing 19 at 3. On March 11, 2016, Chambers arrived in NDCS custody at the Diagnostic and Evaluation Center in Lincoln. Filing 19 at 19. Upon arrival, Chambers told an intake officer that he had concerns about two other inmates, R.E. and D.S., posing a threat to his safety. Filing 19 at 19. The cause of Chambers's concern was that he had testified against R.E. at a trial. Filing 19 at 19. R.E. and D.S.'s names were placed on Chambers's central monitoring list and NDCS made a record indicating Chambers should not be housed in the same facility as R.E. and D.S. Filing 19 at 19. At all relevant times, R.E. and D.S. were placed at Tecumseh State Correctional Institution ("TSCI"). Filing 19 at 20. According to the Amended Complaint, once this entry was made in his central monitoring list, "all NDCS" knew or should have known that placing Chambers in the same facility as R.E. and D.S. exposed him to a substantial risk of harm. Filing 19 at 19.

During his incarceration, Chambers was transferred first to the Nebraska State Penitentiary, then to the Lincoln Correctional Center, and eventually to TSCI where R.E. and D.S. were housed. Filing 19 at 19-21. Prior to his transfer to TSCI, Chambers told defendants Crowder and Sherwood that he could not go to TSCI because he feared for his safety since R.E. and D.S. were housed there. Filing 19 at 21. According to Chambers's exhibits, R.E. was on death row and D.S. was in

Long-Term Restrictive Housing at TSCI and not in the general population. Filing 19 at 34, 50. NDCS apparently believed it could keep Chambers safe in general population at TSCI despite R.E. and D.S. also being in that facility. Filing 19 at 48. Upon his arrival at TSCI, Chambers requested to be placed in protective custody because he did not feel safe. Filing 19 at 21. Chambers also had concerns that even if R.E. and D.S. could not hurt him themselves, they might recruit other inmates to do so. Filing 19 at 21.

Defendant Dela Cruz, a case manager at TSCI, told Chambers he could not go into protective custody at TSCI because there was no room. Filing 19 at 5, 21. Thus, Chambers was housed in immediate segregation and placed in a special management unit. Filing 19 at 21. While in the special management unit, Chambers wrote defendant Hansen four times, Dela Cruz once, and Thomas once expressing his concern about being placed at TSCI. Filing 19 at 22, 33-37. Chambers was in the special management unit from June of 2018 to July 20, 2018. Filing 19 at 21, 24. During this time, Chambers refused two orders by NDCS staff instructing him to move from the special management unit to the general population. Filing 19 at 23-24. NDCS issued Chambers misconduct reports for his refusal to comply with these orders. Filing 19 at 23-24.

On July 20, 2018, NDCS staff told Chambers that he was being placed in housing unit 2AB, a part of the general population at TSCI. Filing 19 at 24. Less than five minutes after arriving at housing unit 2AB, three other inmates assaulted Chambers. Filing 19 at 24. After the assault, Chambers returned to the special management unit. Filing 19 at 25. NDCS staff did not give Chambers medical attention for three days after the assault despite his requests for the same. Filing 19 at 25. As a result of the assault, Chambers suffered injuries, including chronic back and neck pain. Filing 19 at 27. Chambers was transferred back to the Lincoln Correctional Center seven days after the assault. Filing 19 at 46. Chambers claims that while he was housed at TSCI in July

3

2018, defendants Hillman and Hardy failed to safeguard his property which resulted in other inmates stealing it. Filing 19 at 26.

Chambers filed the present suit on May 20, 2019. Filing 1. On July 19, Senior Judge Richard Kopf performed an initial review to determine whether summary dismissal was appropriate under 28 U.S.C. §§ 1915(e) and 1915A. Filing 10. Judge Kopf allowed Chambers's Eighth Amendment failure-to-protect claims to proceed against all Defendants in their individual capacities except as to defendants Hardy and Hillman. Filing 10 at 12. Judge Kopf dismissed Chambers's claims against Defendants in their official capacities for monetary damages and declaratory relief but permitted his claims for prospective injunctive relief to go forward. Filing 10 at 13. Judge Kopf granted Chambers leave to file an amended complaint. Filing 10 at 13.

Chambers filed his Amended Complaint on September 17, 2019. In it, he alleges a § 1983 failure-to-protect claim based on the 8th Amendment against all Defendants, Filing 19 at 27-28; a § 1983 denial-of-healthcare claim based on the 8th Amendment against defendants Frakes, Deol, Hansen, Thomas, Dela Cruz, and John Does 1 through 5, Filing 19 at 28-29; a § 1983 claim based on his placement in isolation in alleged violation of the Eighth Amendment against defendants Frakes, Hansen, Sheair, Sherwood, Chadwick, Zamora, Dela Cruz, Crowder, Thomas, Hillman, and Hardy, Filing 19 at 29-30; a § 1983 claim for purported violation of his due-process rights under the Fifth Amendment and Fourteenth Amendments against defendants Frakes, Hansen, Sheair, Sherwood, Chadwick, Zamora, Dela Cruz, Crowder, Thomas, Hardy, and Hillman, Filing 19 at 30-31; and a tort claim of negligence against defendants Hillman and Hardy, Filing 19 at 31. He alleges all claims are against Defendants in both their individual and official capacities. Filing 19 at 4-6. Further, although his Amended Complaint is less than clear, the Court reads it as seeking

4

injunctive relief, declaratory relief, and monetary damages for each of his claims. Filing 19 at 27-32.

Following the filing of the Amended Complaint, Defendants moved to dismiss several of Chambers's claims under Federal Rules of Civil Procedure 12(b)(1) and (b)(6). Filing 50; Filing 51. Specifically, Defendants move to dismiss all requests for monetary damages or other retroactive relief which are filed against them in their official capacities. Filing 51 at 3. Defendants also move to dismiss all claims for injunctive relief against them in their individual capacities. Filing 51 at 3-5. Defendants Frakes and Deol move to dismiss the Eighth Amendment claims against them, claiming they cannot be held liable under a respondeat superior theory for a § 1983 claim. Filing 51 at 5-6. Defendants Frakes, Deol, Hansen, Thomas, and Dela Cruz move to dismiss the Eighth Amendment claim involving denial of healthcare against them because they claim they had no involvement in the medical care Chambers received or was denied. Filing 51 at 6. All Defendants move to dismiss Chambers's claim regarding his placement in isolation, arguing their actions do not violate the Eighth Amendment. Filing 51 at 6-8. All Defendants move to dismiss Chambers's due-process claims arguing there is no established right to avoid a misconduct report while incarcerated or to not have other inmates steal one's possessions. Filing 51 at 8-9. Lastly, defendants Hillman and Hardy move to dismiss Chambers's negligence claim against them, arguing either that Chambers has failed to state a claim upon which relief can be granted or that sovereign immunity bars the claim. Filing 51 at 9-11.

### III.    ANALYSIS

### A.  Standards of Review

*1.  Lack of Subject-Matter Jurisdiction under Federal Rule of Civil Procedure 12(b)(1)*

5

"Rule 12(b)(1) . . . governs challenges to subject matter jurisdiction." *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). "In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "In a facial challenge to jurisdiction, the court presumes all of the factual allegations concerning jurisdiction to be true and will grant the motion only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Young Am. Corp. v. Affiliated Comput. Servs. (ACS), Inc.*, 424 F.3d 840, 843–44 (8th Cir. 2005) (citing *Titus*, 4 F.3d at 593). In a factual challenge to jurisdiction, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.2d at 730.

When the complaint is factually challenged, "[t]he plaintiff bears 'the burden of proving the existence of subject matter jurisdiction,' and [the court] may look at materials 'outside the pleadings'" when determining whether it has jurisdiction. *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019) (quoting *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc)). "[N]o presumptive truthfulness attaches to [the plaintiff's] allegations, and the existence of disputed material facts will not preclude [the court] from evaluating . . . the merits of jurisdictional claims." *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 861 (8th Cir. 2013) (citing *Osborn*, 918 F.2d at 730). "It is the court's duty to 'decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue.'" *Buckler*, 919 F.3d at 1044 (quoting *Osborn*, 918 F.2d 724).

   2.   *Failure to State a Claim Under Federal Rule of Civil Procedure 12(b)(6)*

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead

6

"enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 192 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

In analyzing a motion to dismiss, the Court must "accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party, but [is] not bound to accept as true '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' or legal conclusions couched as factual allegations." *McDonough v. Anoka Ct*y., 799 F.3d 931, 945 (8th Cir. 2015) (citations omitted) (quoting *Iqbal*, 556 U.S. at 678). "When considering a Rule 12(b)(6) motion, the court generally must ignore materials outside the pleadings, but it may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." *Ashford v. Douglas Cty.*, 880 F.3d 990, 992 (8th Cir. 2018) (quoting *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014)).

### B. Discussion

As an initial matter, the Court notes Defendants seek dismissal under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Filing 50 at 1; Filing 51 at 2. However, they do not specify which portion of their motion is pursuant to an alleged lack of subject matter jurisdiction under Rule 12(b)(1) and which is for an alleged failure to state a claim under Rule 12(b)(6). As the Court reads Defendants' motion and briefing, their argument relating to the official-capacity claims for retroactive monetary and declaratory relief are based on the assertion that the

Defendants are protected by Eleventh Amendment immunity. *See* Filing 51 at 2. Such immunity is a jurisdictional question and thus the Court construes this portion of Defendant's motion under Rule 12(b)(1). *See Murphy v. State of Ark.*, 127 F.3d 750, 755 (8th Cir. 1997) ("[T]he Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights cases against states and their employees." (quoting *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989))). The Court reads the remainder of Defendants' motion as asserting arguments only under Rule 12(b)(6) and will analyze it accordingly.

1. *Official-Capacity Claims for Monetary and Retroactive Declaratory Relief Against All Defendants*

Defendants argue that to the extent Chambers asserts claims against them in their official capacities for monetary damages and retroactive declaratory relief, such claims are barred by Eleventh Amendment and § 1983 qualified immunity. Filing 51 at 3. The Court agrees such claims must be dismissed.

Section 1983 provides for an action against any "person" who violates another's civil rights under color of law. 42 U.S.C. § 1983. The Supreme Court has clarified that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989). Furthermore, the Eleventh Amendment bars suits by private parties against a state, absent waiver or abrogation by statute. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S. Ct. 684, 687–88, 121 L. Ed. 2d 605 (1993) ("Absent waiver, neither a State nor agencies acting under its control may 'be subject to suit in federal court.'" (quoting *Welch v. Tex. Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 480, 107 S. Ct. 2941, 2949–50, 97 L. Ed. 2d 389 (1987) (plurality opinion))). The parties do not point to any statute which abrogates state liability in this case and

"[i]t is well-settled that the State of Nebraska has not waived its immunity from liability in civil rights actions." *Stagemeyer v. Cty. of Dawson*, 192 F. Supp. 2d 998, 1005 (D. Neb. 2002). Thus, the Eleventh Amendment and qualified immunity apply to Chambers's claims against Defendants in their official capacities.

However, an exception to such immunity, set forth in *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908), exists for claims against state officials which seek only *prospective* relief, such as an injunction. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." (internal quotation marks and citations omitted)). Monetary damages and claims for retroactive declaratory relief remain barred by the Eleventh Amendment. *Puerto Rico Aqueduct*, 506 U.S. at 146, 113 S. Ct. at 688 (stating the *Ex Parte Young* exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past") (citing *Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 426, 88 L. Ed. 2d 371 (1985)).

Senior Judge Richard Kopf previously dismissed Chambers's official-capacity claims against Defendants for monetary and declaratory relief based on Eleventh Amendment and § 1983 qualified immunity. Filing 10 at 13. Chambers concedes that the identical claims in his Amended Complaint should also be dismissed on the same grounds and that he only re-asserted them in order to preserve the record for appeal. Filing 54 at 3. The Court agrees they are barred by the Eleventh Amendment and § 1983. Accordingly, Chambers's claims against all Defendants in their official

capacities are dismissed to the extent they seek monetary damages or retroactive declaratory relief and are permitted to proceed only as they relate to prospective, injunctive relief.

2. *Injunctive Relief Against Defendants in Their Individual Capacities*

In his Amended Complaint, Chambers requests an injunction "i) enjoining Defendants Frakes and Sheair from moving Plaintiff to TSCI or NSP; and, ii) requiring Defendants to replace Plaintiff's property." Filing 19 at 32. He also seeks unspecified injunctive relief in relation to his Eighth Amendment claims that prison officials failed to protect him from the assault by other inmates, provided him with inadequate medical care after the assault, and improperly placed him in isolation, and his due-process claims relating to being transferred to TSCI, receiving misconduct reports, and being deprived of his property. Filing 19 at 27-31. Chambers seeks this injunctive relief against Defendants in both their official and their individual capacities. *See* Filing 19 at 4-6. Defendants move for dismissal of the claims which seek injunctive relief against them in their individual capacities only. The Court agrees such claims should be dismissed.

While Chambers does not plead his requests for an injunction in great detail, it is apparent that whatever injunction Chambers might seek relates to Defendants' actions in the scope of their official duties, not in their private roles. *See Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989). ("Generally, individual-capacity suits involve actions taken by governmental agents outside the scope of their official duties. Official-capacity suits typically involve either allegedly unconstitutional state policies or unconstitutional actions taken by state agents possessing final authority over a particular decision."). Only as officials of NDCS would the various Defendants have the authority to transfer Chambers among facilities, find and return property other inmates might have stolen, provide official medical care at prison facilities, and issue misconduct reports.

Thus, to the extent Chambers seeks injunctive relief, it can apply only to Defendants in their official capacity. Accordingly, the Court finds Chambers fails to state a claim for injunctive relief against Defendants in their individual capacities. *Accord Greenawalt v. Ind. Dep't of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("Section 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity."); *Scott v. Flowers*, 910 F.2d 201, 213 (5th Cir. 1990); (holding that in suit by judicial officer against judicial commission alleging § 1983 claim for violating his First Amendment rights, "the injunctive relief sought and won by [the plaintiff] can be obtained from the defendants only in their official capacity as [judicial] commissioners" with the authority to expunge his disciplinary record); *see also McGuire v. Strange*, 83 F. Supp. 3d 1231, 1242 n.8 (M.D. Ala. 2015) (stating claims for injunctive and declaratory relief may not be asserted against municipal officials in their individual capacities); *Jones v. Buckner*, 963 F. Supp. 2d 1267, 1281 (N.D. Ala 2013) (holding state officer may be sued in personal capacity under § 1983 only for damages and not for prospective equitable relief); *Hatfill v. Gonzales*, 519 F. Supp. 2d 13 (D.D.C. 2007) (stating personal-capacity claim for injunctive relief cannot proceed because injunctive relief seeks to conform government's conduct to federal law).

Chambers's claims for injunctive relief against Defendants in their individual capacities are dismissed for failure to state a claim.

### 3. Injunctive Relief as to Return of Property

As to Chambers's remaining claims for injunctive relief which are against Defendants in their official capacities, Defendants argue that the allegation relating to replacement of Chambers's property seeks improper retroactive relief which is not a true injunction and does not fall under the *Ex Parte Young* exception to the bar on suits against state officials. *See Verizon Md.*, 535 U.S. at

11

645, 122 S. Ct. at 1760 (*Ex Parte Young* exception applies only to claims against state officials for prospective relief). The Court finds Chambers's claim is one for prospective injunctive relief which is permissible under *Ex Parte Young* and therefore denies Defendants' motion.

Chambers requests this Court issue an injunction "requiring the Defendants to replace Plaintiff's property." Filing 19 at 32. The items Chambers alleges that were stolen from him include electronics, toiletries, clothing, and food items. Filing 19 at 52-53. Defendants argue this is an improper request for retroactive monetary damages disguised as a request for prospective injunctive relief because what Chambers really seeks is for Defendants to replace his property or compensate him for it. Filing 51 at 5. In viewing the Amended Complaint in the light most favorable to Chambers as the Court is required to do, *see McDonough*, 799 F.3d at 945, he is alleging these items remain out of his possession and he seeks to have them returned rather than compensated-for monetarily. This is a proper injunctive request for relief from an ongoing violation rather than a prohibited claim for retroactive monetary damages against a state official. *See Verizon Md.*, 535 U.S. at 645, 122 S. Ct. at 1760 (stating that the *Ex parte Young* exception to an Eleventh Amendment bar to suit applies where a party seeks *prospective* relief against a state official). Accordingly, the Court denies Defendants' motion to dismiss Chambers's claim against them in their official capacities for injunctive relief with respect to return of his property.[1]

### 4.   *Respondeat Superior Claims against Frakes and Deol*

Next, Defendants argue that Chambers has failed to state a claim against defendants Frakes and Deol. Filing 51 at 6. As set forth above, Frakes is the Director of NDCS and Deol is the

---

[1] As explained further below, certain portions of Chambers's claim for return of his property and negligence stemming therefrom are dismissed on other grounds. *See infra* Sections III.B.7.c (due process claim for property deprivation), III.B.8 (tort claim). However, to the extent Defendants seek a blanket dismissal of all injunctive relief relating to Chambers's request for return of property on the ground it is actually a request for compensatory damages in disguise, the request for dismissal is denied.

Medical Director of NDCS. Filing 19 at 4-5. Defendants argue that, as supervisors, Frakes and Deol cannot be held responsible for Eighth Amendment violations attributable to their subordinates. Filing 51 at 5. The Court finds that to the extent Chambers has alleged Frakes and Deol were directly involved in executing the decisions at issue, his claims can proceed, but to the extent he alleges only supervisor liability against Deol and Frakes, his claims are dismissed.

"To state a claim under § 1983, the plaintiff must plead that a government official has personally violated the plaintiff's constitutional rights." *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 676, 129 S. Ct. 1937); *see also Marsh v. Phelps Cty.*, 902 F.3d 745, 754 (8th Cir. 2018). Vicarious liability is inapplicable in § 1983 cases, but "a supervisor may still be liable under § 1983 if either his direct action or his 'failure to properly supervise and train the offending employee' caused the constitutional violation at issue." *Id.* (quoting *Tlamka v. Serrell*, 244 F.3d 628, 635 (8th Cir. 2001)).

Chambers makes § 1983 claims against Frakes for Eighth Amendment failure to protect, denial of healthcare, use of isolation, and Fifth Amendment violation of due process. Filing 19 at 27-31. Chambers makes a § 1983 claim against Deol only for Eighth Amendment denial of healthcare. Filing 19 at 27-31. As discussed below, Chambers's § 1983 claim for use of isolation is dismissed on other grounds and his due-process claims for disciplinary action and deprivation of property fail on other grounds as well. *See infra* sections III.B.6 (Eighth Amendment isolation claim), III.B.7 (due-process claim). Accordingly, the Court will analyze Frakes's and Deol's liability in the context of Chambers's medical claim and Frakes's liability for Chambers's failure-to-protect claim and due-process claim based on being transferred to TSCI in turn. For the reasons stated below, Chambers's medical claims against Frakes and Deol fail to state a claim upon which

13

relief can be granted, but his claims for failure-to-protect and denial of due process against Frakes survive.

a.   Supervisor Liability for Failure-to-Protect Claim against Frakes

Defendant Frakes argues Chambers alleges only a respondeat superior theory of liability against him on his failure-to-protect claim and such claim must necessarily fail in the § 1983 context. Because the Court finds Chambers has that Frakes's own actions rather than those of the employees he supervised violated the Eighth Amendment, the motion to dismiss this claim is denied.

"The Eighth Amendment 'requires prison officials to take reasonable measures to guarantee inmate safety by protecting them from attacks by other prisoners.'" *Patterson v. Kelley*, 902 F.3d 845, 851 (8th Cir. 2018) (quoting *Young v. Selk*, 508 F.3d 868, 871 (8th Cir. 2007)). A plaintiff must show that a prison official exhibited a 'deliberate or callous indifference' to an inmate's safety." *Patterson*, 902 F.3d at 851. Thus, "to prevail on a failure-to-protect claim . . . , an inmate must make two showings: '[1] an objective component, [that] there was a substantial risk of harm to the inmate, and [2] a subjective component, [that] the prison official was deliberately indifferent to that risk.'" *Id.* (alterations in original) (quoting *Tucker v. Evans*, 276 F.3d 999, 1001 (8th Cir. 2002)). "[T]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

"To show deliberate indifference via circumstantial evidence, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference.'" *Kulkay v. Roy*, 847 F.3d 637, 644 (8th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994)).

Chambers has alleged facts that demonstrate both an objectively substantial risk of harm to him and Frakes's deliberate indifference to that risk. And, contrary to Frakes's assertion, Chambers alleges direct knowledge and actions on Frakes's part, not just supervisor liability. In particular, Chambers asserts that R.E. and D.S. (or other prisoners acting on their behalf) posed a substantial risk of harm to him were he to be placed at the same facility. Filing 19 at 19. Chambers alleges that Frakes knew or should have known of the substantial risk of harm to Chambers because R.E. and D.S. were on his "central monitoring" list. Filing 19 at 19, 21. Chambers's ability to prove these allegations is a question for another day; at this stage in the proceedings, Chambers has alleged enough facts to assert a failure-to-protect claim against Frakes.

b. Supervisor Liability for Medical Claim against Frakes and Deol

Frakes and Deol argue Chambers alleges only a respondeat superior theory of liability against them on his inadequacy-of-medical-care claim and such claim must therefore necessarily fail in the § 1983 context. The Court agrees and dismisses this claim.

To state a claim of inadequate medical treatment for § 1983 purposes, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292, 50 L. Ed. 2d 251 (1976) "Deliberate indifference has both an objective and a subjective component." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). The objective component requires a plaintiff to demonstrate an objectively serious medical need. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006); *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997). A medical condition is "objectively serious" if the prisoner was diagnosed by a doctor or it is so obvious that a lay person would recognize the

medical need. *Scott v. Benson*, 742 F.3d 335, 340 (8th Cir. 2014). The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need. *Grayson*, 454 F.3d at 808; *Moore*, 123 F.3d at 1086.

Chambers properly alleges that his injuries constitute an "objectively serious medical need," but he does not allege the subjective component of actual knowledge. Filing 19 at 27. Chambers alleges that after he was assaulted, he told "staff on the special management unit that he needed medical attention." Filing 19 at 25. He then alleges that he did not receive medical attention for three days. Filing 19 at 25. Chambers does not allege that either Frakes or Deol were aware of his injuries. *See generally* Filing 19. His only arguments relate to general supervisor liability, *see* Filing 19 at 4-6, which, as explained above, do not suffice in the context of a § 1983 claim. *See Jackson*, 747 F.3d at 543. Therefore, Chambers cannot show deliberate indifference to his medical needs and this claim is dismissed against both Frakes and Deol.

### c.   Supervisor Liability for Due-Process Claim

Lastly, Frakes argues Chambers fails to state a due-process claim based on his transfer to TSCI because his allegation is based solely on a supervisor-liability theory. Because Chambers alleges Frakes's direct involvement in the transfer decision, this claim survives.

In order to set forth a claim for a due-process violation, a plaintiff must allege that government officials "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Saylor*, 812 F.3d at 647 (alterations in original) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)). Chambers asserts that R.E. and D.S. (or other prisoners acting on their behalf) posed a substantial risk of harm to him were he to be placed at the same facility. Filing 19 at 19. Chambers alleges that Frakes knew or should have known of the substantial risk of harm to Chambers because R.E. and D.S. were on his

16

"central monitoring" list. Filing 19 at 19, 21. Accordingly, Chambers has adequately pled a due-process claim against Frakes based on his transfer to TSCI.

For these reasons, Chambers's failure-to-protect claim and due-process transfer claims against Frakes can proceed. Chambers's medical claims against Frakes and Deol are dismissed.

### 5. *Denial of Healthcare Under the Eighth Amendment*

Chambers makes a § 1983 claim asserting an Eighth Amendment violation for denial of healthcare against defendants Frakes, Deol, Hansen, Thomas, Dela Cruz, and John Does 1 through 5. Filing 19 at 28-29. Chambers alleges these Defendants were deliberately indifferent towards his serious health needs after the assault, ignored his requests for treatment, and failed to provide timely care for his injuries. Filing 19 at 28-29. Defendants Frakes, Deol, Hansen, Thomas, and Dela Cruz claim they had no specific involvement in his medical care. As discussed above, Frakes and Deol are dismissed as Defendants regarding this claim based on Chambers advancing only a respondeat-superior theory of liability. As to defendants Hansen, Thomas, and Dela Cruz, the Court agrees Chambers has failed to state a claim against them and his denial-of-healthcare claim should be permitted to proceed against John Does 1 through 5 only.

As set forth above, in order to state a claim of inadequate medical treatment for § 1983 purposes, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S. Ct. at 292. Such "[d]eliberate indifference has both an objective and a subjective component." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). The objective component requires a plaintiff to demonstrate an objectively serious medical need. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006); *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997). The subjective component requires a plaintiff to show that the defendant actually knew of, but deliberately disregarded, such need. *Grayson*, 454 F.3d at 808;

17

Moore, 123 F.3d at 1086. Furthermore, "[t]o prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017).

Chambers alleges that "medical staff" at TSCI did not provide him medical treatment after he had been assaulted. Filing 19 at 25. Chambers contends these unknown special management unit staff were the ones who were dismissive of his medical needs. Filing 19 at 25. He fails to allege facts to demonstrate personal involvement or knowledge on the part of Hansen, Thomas, or Dela Cruz with regard to his post-assault medical treatment. *See generally* Filing 19. Thus, Chambers fails to state a valid Eighth Amendment claim for inadequate medical care against these named Defendants. Defendants do not contest and the Court agrees that Chambers's claim can proceed against John Does 1 through 5.

### 6. *Eighth Amendment Isolation Claim*

Chambers makes a § 1983 claim asserting defendants Frakes, Hansen, Sheair, Sherwood, Chadwick, Zamora, Dela Cruz, Crowder, and Thomas violated his Eighth Amendment rights when they placed him in isolation—also known as restrictive housing—without a valid reason. Filing 19 at 29-30. These defendants move to dismiss, arguing Chambers was placed in isolation for his protection, not as a form of punishment, and at his own request. Filing 51 at 6-7. The Court agrees that Chambers's placement in isolation in this context does not violate the Eighth Amendment and must be dismissed for failure to state a claim upon which relief can be granted.

Under the Eighth Amendment, administrative segregation "is not necessarily unconstitutional, but it may be, depending on the duration of the confinement and the conditions thereof." *Hutto v. Finney*, 437 U.S. 678, 685–86, 98 S. Ct. 2565, 2571, 57 L. Ed. 2d 522 (1978) (internal quotations omitted). "To establish that a prisoner's conditions of confinement violate the

Eighth Amendment, the prisoner must show that (1) the alleged deprivation is, 'objectively, sufficiently serious,' resulting 'in the denial of the minimal civilized measure of life's necessities,' and (2) that the prison officials were deliberately indifferent to 'an excessive risk to inmate health or safety,' meaning that the officials actually knew of and disregarded the risk." *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834, 837, 114 S. Ct. 1970, 1977, 1979, 128 L. Ed. 2d 811 (1994)).

Chambers argues his transfer to TSCI and placement into immediate segregation violated his Eighth Amendment rights. Filing 19 at 29. However, Chambers fails to allege facts that show the named Defendants subjected him to cruel and unusual punishment by placing him in immediate segregation. Chambers was placed in immediate segregation for approximately twenty days, but this action was undertaken for his own safety. Filing 19 at 21-22. In fact, Chambers even requested to stay in immediate segregation rather than being placed in the general population based on his safety concerns. Filing 19 at 36. Chambers's chief complaint is not about the conditions of isolation, but rather his belief that Defendants could have avoided placing him in isolation at all had they kept him at a different facility. *See* Filing 19 at 29-30. While Chambers's transfer to TSCI and resultant placement in immediate segregation may have been unnecessary and ill-advised, he does not allege facts which would support that his time in isolation deprived him of life's necessities or was otherwise cruel and unusual. *See Williams*, 49 F.3d at 445. Therefore, Chambers's Eighth Amendment claim for use of isolation is dismissed.

### 7. *Due Process*

Chambers alleges Fifth and Fourteenth Amendment Due Process Clause violations for deprivations of his liberty and property. Filing 19 at 30. Construed broadly, the Amended Complaint asserts Defendants violated Chambers's due-process rights by transferring him into

immediate segregation at TSCI, issuing him misconduct reports for his refusal to leave immediate

segregation, and depriving him of his property. Filing 19 at 30-31. Defendants argue none of these

actions rise to the level of a due-process violation. Filing 51 at 8-9. The Court finds Chambers fails

to state a claim for the issuance of misconduct reports and deprivation of property claims but allows

his claim of denial of due process based on his transfer to TSCI to go forward.

    a.  Transfer to TSCI and Placement in Immediate Segregation

    NDCS transferred Chambers to TSCI against his will which led him to request to be placed

in protective custody. Normally, a decision to transfer an inmate within a prison system does not

rise to the level of a due-process violation:

> "[T]he Due Process Clause in and of itself [does not] protect a duly convicted
> prisoner against transfer from one institution to another within the state prison
> system. Confinement in any of the State's institutions is within the normal limits or
> range of custody which the conviction has authorized the State to impose."

*Saylor v. Nebraska*, 812 F.3d 637, 646 (8th Cir. 2016) (citing *Meachum v. Fano,* 427 U.S. 215,

225, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (1976)). This is true even if the inmate was transferred to "a

higher-security institution [that] presented a more restrictive environment than [the prior

institution]." *Freitas v. Ault*, 109 F.3d 1335, 1337 (8th Cir. 1997) (citing *Moorman v. Thalacker*,

83 F.3d 970, 973 (8th Cir. 1996). "In fact, prison administrators may ordinarily transfer a prisoner

'for whatever reason or for no reason at all . . . .'" *Cornell v. Woods*, 69 F.3d 1383, 1387 (8th Cir.

1995) (quoting *Goff v. Burton*, 7 F.3d 734, 737 (8th Cir. 1993)).

    Thus, the mere fact Chambers was transferred to TSCI and placed into a more restrictive

environment does not state a due-process claim. However, an inmate may have a colorable claim

under the Fourteenth Amendment if the action by government officials "impose[d] atypical and

significant hardship on [him] in relation to the ordinary incidents of prison life." *Saylo*r, 812 F.3d

at 647 (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995)).

In this case, the transfer to TSCI *with the known potential for harm* to Chambers "impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Id.* While everyday incarcerated life may pose a slightly elevated risk of danger, prison officials knowingly placing an inmate in a confined space with others who intend to target and injure him is unacceptable and, thankfully, atypical of prison life. Chambers has adequately stated a due-process claim based on his transfer of facilities and Defendants' motion to dismiss this claim is denied.

b. Disciplinary Action

Chambers next claims a due-process violation for receiving disciplinary reports when he opposed being placed back into the general population at TSCI. Filing 19 at 30-31. The Court finds this claim should be dismissed.

"In determining what is 'due process' in the prison context, we are reminded that 'one cannot automatically apply procedural rules designed for free citizens in an open society . . . to the very different situation presented by a disciplinary proceeding in a state prison.'" *Hewitt v. Helms*, 459 U.S. 460, 472, 103 S. Ct. 864, 872, 74 L. Ed. 2d 675 (1983) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 560, 94 S. Ct. 2963, 2976, 41 L.Ed.2d 935 (1974)). "[I]ncarcerated persons retain only a narrow range of protected liberty interests." *Id.* Accordingly, the general rule is that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Id.* (quoting *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S. Ct. 2543, 2547, 49 L. Ed. 2d 466 (1976)).

Chambers points to no authority stating that he enjoys a right against receiving misconduct reports. Further, he does not allege that he lost any privileges or otherwise suffered any loss of

liberty as a result of receiving the misconduct reports. *See* Filing 19 at 30-31. The misconduct reports fall well within the purview of NDCS's discretion to administer disciplinary procedures within its facilities as it sees fit and are therefore not subject to judicial oversight under the Due Process Clause. This claim is dismissed.

### c. Deprivation of Property

Finally, Chambers alleges Defendants "deprived [him] of his property without . . . due process." Filing 19 at 31. However, Chambers admits his property "was stolen from him by other prisoners" not Defendants. Filing 19 at 26. Accordingly, Chambers was not deprived of property by any state actors and there can be no constitutional violation. This claim is dismissed.

### 8. *Hillman and Hardy Tort Claims*

Defendants Hillman and Hardy allege the negligence claim against them should be dismissed on two alternate grounds: for failure to state a claim or because they are protected by sovereign immunity. The Court agrees the claim should be dismissed.

To prevail in any negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and resulting damages. *Lewison v. Renner*, 298 Neb. 654, 663, 905 N.W.2d 540, 548 (2018).

Chambers alleges Hillman and Hardy are "employees at TSCI." Filing 19 at 5. He claims "Defendants Hillman and Hardy were negligent by not safeguarding Chambers's property, allowing it to be stolen by other prisoners, and by failing to retrieve it for Chambers even though they knew who stole it and had the authority to retrieve it." Filing 19 at 31. However, Chambers does not allege that Hillman and Hardy, in either their individual or official capacities, had a legal duty to prevent others from taking Chambers's property. Because legal duty is an essential element of negligence which Chambers has failed to allege, the Court need not address Hillman and

22

Hardy's argument regarding sovereign immunity. Chambers's tort claim fails and will be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, Filing 50, is granted in part and denied in part.

IT IS ORDERED:

1. Defendants' Motion to Dismiss, Filing 50, is granted in part and denied in part as follows;

2. All claims against Defendants in their official capacities for monetary damages and retroactive declaratory relief are dismissed;

3. All claims against Defendants in their individual capacities for injunctive relief are dismissed;

4.  Chambers's 42 U.S.C. § 1983 claim asserting a violation of the Eighth Amendment based on inadequate medical treatment is dismissed as to defendants Deol, Frakes, Hansen, Thomas, and Dela Cruz;

5. Chambers's 42 U.S.C. § 1983 claim asserting a violation of the Eighth Amendment based on his placement in isolation is dismissed;

6. Chambers's 42 U.S.C. § 1983 claim asserting due-process violations based on his receiving misconduct reports and being deprived of property are dismissed;

7. Chambers's tort claim against Hillman and Hardy is dismissed;


Dated this 14th day of July, 2020.

BY THE COURT:

Brian C. Buescher
United States District Judge