IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DARRYL R. CHAMBERS,<br><br>　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>DELA CRUZ, Case Manager, Tecumseh State Prison, All employed at Lincoln Correctional Center; SCOTT FRAKES, Director, All employed at Lincoln Correctional Center; CATHY SHEIR, Warden, All employed at Lincoln Correctional Center; SHERWOOD, Case Manager, All employed at Lincoln Correctional Center; HARDY, Corporal, All employed at Tecumseh Correctional Center; PAM HILLMAN, All Employed at Tecumseh Correctional Center; JOHN DOE NOS. 1-5; and CRAIG GABLE, Warden,<br><br>　　　　　　　　Defendants. | 4:19-CV-3047<br><br>MEMORANDUM AND ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS |

## I.　INTRODUCTION

Darryl R. Chambers, an inmate in the custody of the Nebraska Department of Correctional Services (NDCS) who currently resides at the Lincoln Correctional Center, sued multiple NDCS employees for violations of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment and in tort. After several motions and orders, Chambers's remaining causes of action are official-capacity claims against defendants Jane Hardy, Scott Frakes, Cathy Sheair,[1] Chelsea De La Cruz, Brian Sherwood, Pam Hillman, and Craig Gable, and failure-to-provide-medical-care claims against five John Doe defendants in their individual capacities. Defendants' have filed a Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(c). Filing 152. For the reasons stated herein, the Court grants Defendants' Motion.

---

[1] Although the case caption lists Defendant Cathy Sheair's last name as "Sheir," the correct spelling is "Sheair."

1

## II. BACKGROUND

Defendants' Brief in Support of their Motion indicates they are making a factual attack on the Court's subject-matter jurisdiction. Filing 153 at 3–4 (outlining the standards for factual challenged on subject-matter jurisdiction). Thus, the Court may consider matters outside the pleadings in resolving the jurisdictional issue raised in Defendants' Motion. *See Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018).

Since 2016, Chambers has been an inmate in NDCS's custody. Filing 19 at 4; Filing 99-2 at 2; Filing 126-1 at 1. Before being placed in a Nebraska state prison, Chambers underwent an interview process about any conflicts he may have with other inmates. Filing 19 at19; Filing 99-1 at 10. During the interview, Chambers stated that he did not want to be in contact with two inmates, D.S. and R.E, because he had testified at R.E.'s trial and had shot D.S.'s brother.[2] Filing 99-1 at 22. Both D.S. and R.E. resided at Tecumseh State Correctional Institute (TSCI). D.S. and R.E. were placed on a Central Monitoring list with Chambers, which stated that Chambers was to be separated by institution from R.E. and by housing unit from D.S. Filing 99-2 at 7–8. Central Monitoring is a system that collects, maintains, and shares information regarding conflicts between inmates. Filing 99-1 at 3–4, 7–8. NDCS then transferred Chambers to the Lincoln Correctional Center. Filing 99-2 at 101.

A few months into Chambers's sentence, NDCS transferred Chambers from the Lincoln Correctional Center to the Nebraska State Penitentiary. Filing 99-7 at 1. Shortly after arriving, Chambers requested to be placed in Protective Custody, claiming that four inmates associated with D.S. and R.E. had threatened him. Filing 99-2 at 62; Filing 99-7 at 1; Filing 126-1 at 2. The Nebraska State Penitentiary does not have a Protective Custody unit. Filing 99-7 at 1. After

---

[2] Chambers's Amended Complaint refers to these inmates by their initials, so the Court will do so as well.

speaking with Chambers, NDCS staff transferred him back to the Lincoln Correctional Center. Filing 99-7 at 2.

On June 28, 2018, staff at the Lincoln Correctional Center decided to transfer inmates based on their classification, programming, and behavior so that beds could be freed up due to the number of inmates being assigned to the facility. Filing 99-3 at 2–3. Defendant Sheair, the Deputy Warden at the Lincoln Correctional Center, recommended transferring Chambers to TSCI. Filing 99-2 at 102; Filing 99-3 at 4. According to Defendants, R.E. and D.S. would be unable to interact with Chambers at TSCI because R.E. resided in the Inmates Sentenced to Death Penalty gallery at TSCI's Special Management Unit and D.S. resided in Long Term Restrictive Housing in Gallery B at TSCI's Special Management Unit, which are both segregated from General Population inmates. Filing 99-1 at 5; Filing 99-3 at 3. Ultimately, the Central Transfer Authority of the NDCS approved Sheair's recommendation to transfer Chambers to TSCI. Filing 99-2 at 102; Filing 99-3 at 4. As he was leaving the Lincoln Correctional Center, Chambers told defendant Sherwood that he had concerns about D.S., R.E., and Security Threat Groups[3] at TSCI. Filing 99-9 at 2.

Once Chambers arrived at TSCI he immediately requested to be placed in Protective Custody. Filing 99-2 at 70; Filing 99-4 at 3–4. Because TSCI did not have beds available in the Protective Custody unit, they placed Chambers in Immediate Segregation pending a Protective Custody investigation pursuant to TSCI custom. Filing 99-4 at 4; Filing 99-10 at 1–2. After conducting the investigation, officials at TSCI denied Chambers's request and moved him to TSCI's General Population unit on July 20, 2018. Filing 19 at 24; Filing 99-2 at 70–73. That same day, shortly after Chambers arrived, three inmates who Chambers did not know assaulted him and stole his property. Filing 19 at 24, 26; Filing 99-2 at 80; Filing 99-4 at 6. The inmates were not on

---

[3] According to the Nebraska Administrative Code, a "Security Threat Group" is a "prison gang." 72 Neb. Admin. Code § 1-003.02(D).

3

a Central Monitoring list with Chambers. Filing 99-4 at 6. TSCI's warden[4] avers that he has no information that there was any connection between the three inmates and D.S. or R.E. Filing 99-4 at 6. After the assault, Chambers was placed back into Immediate Segregation while the assault was investigated and later returned to the Lincoln Correctional Center. Filing 99-4 at 6; Filing 99-4 at 6, 31.

On May 20, 2019, Chambers sued Defendants. Filing 1. In his Amended Complaint, Chambers brought a failure-to-protect claim, a failure-to-provide-medical-care claim, a conditions-of-confinement claim based on his placement in isolation, a due process claim, and a tort claim. Filing 19 at 27–31. Chambers's Amended Complaint requests injunctive relief to enjoin Frakes, the current Director of NDCS, and Sheair from transferring him to TSCI or the Nebraska State Penitentiary and to "require[e] Defendants to replace [Chambers's] property" that was stolen when the three inmates attacked Chambers. Filing 19 at 32. The Amended Complaint focuses mainly on what happened at the beginning of Chambers's incarceration to shortly after he was transferred back to the Lincoln Correctional Center from TSCI. *See generally* Filing 19. It does not make any allegations related to ongoing constitutional violations. *See generally* Filing 19. Following the Court's orders on motions to dismiss and for summary judgment, the only remaining claims are official-capacity claims against Defendants Jane Hardy, Scott Frakes, Cathy Sheair, Chelsea De La Cruz, Brian Sherwood, Pam Hillman, and Craig Gable, and failure-to-provide-medical-care claims against five John Doe defendants in their individual capacities.

On September 14, 2022, Defendants filed the present Motion for Judgment on the Pleadings. Filing 152.

---

[4] TSCI's warden at the time was Brad Hansen. Filing 99-4 at 4. Because Hasnen is no longer the warden at TSCI, the Court ordered his substitution with the current warden at TSCI, Craig Gable, for Chambers's official-capacity claims.

### III. ANALYSIS

#### A. Initial Matters

Defendants style their Motion as made under Federal Rule of Civil Procedure 12(b)(1) and 12(c). As an initial matter, Defendants cannot move under Rule 12(b) because they have already filed an answer to Chambers's Amended Complaint. *See* Fed. R. Civ. P. 12(b) ("A motion asserting any of [the 12(b)] defenses must be made before pleading if a responsive pleading is allowed."). Nevertheless, a party may challenge subject-matter jurisdiction at any time. *See Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 982 (8th Cir. 2009) ("We recognize that '[a]ny party or the court may, at any time, raise the issue of subject matter jurisdiction.'" (quoting *GMAC Com. Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 829 (8th Cir. 2004))). This principle is encapsulated in Federal Rule of Civil Procedure 12(h)(3), which provides, "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Accordingly, district courts in this circuit have construed untimely Rule 12(b)(1) motions as falling under Rule 12(h)(3). *See, e.g., Hebert v. Winona Cnty.*, 111 F. Supp. 3d 970, 974 (D. Minn. 2015); *Brown v. Grandmother's, Inc.*, No. 4:09CV3088, 2010 WL 611002, at *3 (D. Neb. Feb. 17, 2010). The standards for evaluating subject-matter jurisdiction under Rule 12(h)(3) are the same as those under Rule 12(b)(1). *See Jenkins v. Pech*, 301 F.R.D. 401, 403–04 (D. Neb. 2014); *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 880 n.3 (3d Cir. 1992) (stating that the only distinction between Rule 12(h)(3) and Rule 12(b)(1) motions is that the "former may be asserted at any time" and that, when they both challenge subject-matter jurisdiction, they are "analytically identical").

As to Defendants' invocation of Rule 12(c), Chambers asserts that any of Defendants' arguments aimed at the merits of his pleadings is improper. Chambers refers the Court to Federal

5

Rule of Civil Procedure 12(g)(2), which prohibits a party from making "another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion" except as provided under Rule 12(h)(2) or (3). Fed. R. Civ. P. 12(g)(2). Chambers's position overlooks the fact that under Rule 12(h)(2)(B), which is expressly excluded from Rule 12(g)(2)'s coverage, a party may assert a Rule 12(c) motion for failure to state a claim upon which relief can be granted, Fed. R. Civ. P. 12(h)(2)(B), so long as the motion is made after the close of pleadings "but early enough not be delay trial." Fed. R. Civ. P. 12(h)(c). Trial has not yet been set in this matter, so Defendants' Motion under Rule 12(c) asserting a failure to state a claim is proper.

### B. Subject-Matter Jurisdiction

Because "[i]n every federal case the court must be satisfied that it has jurisdiction before it turns to the merits of other legal arguments," *Carlson v. Arrowhead Concrete Works, Inc.*, 445 F.3d 1046, 1050 (8th Cir. 2006), the Court begins with Defendants' arguments attacking the Court's subject-matter jurisdiction over Chambers's injunctive relief requests. Defendants argue that Chambers lacks standing for his injunctive relief request against Frakes and Sheair to prevent them from transferring him to the Nebraska State Penitentiary or TSCI. Filing 153 at 5–7. Somewhat similarly, Defendants further contend that this request for injunctive relief became moot when Chambers was transferred back to the Lincoln Correctional Center. Filing 153 at 5–7. As to Chambers's injunctive relief request to have his property returned to him or replaced, Defendants assert that this request does not ask for prospective injunctive relief and is therefore unavailable in an official-capacity suit. Filing 153 at 14. The Court agrees with Defendants that it lacks subject-matter jurisdiction over these requests for injunctive relief.

*1. Rule 12(b)(1)/Rule 12(h)(3) Standards*

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a pre-answer motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Defendants' Brief in Support of their Motion indicates that they are making a "factual" attack on this Court's subject-matter jurisdiction. Filing 153 at 3–4 (outlining the standards for factual challenged on subject-matter jurisdiction). The Eighth Circuit Court of Appeals has explained that on a Rule 12(b)(1) motion making a factual attack on subject-matter jurisdiction,

> The plaintiff bears "the burden of proving the existence of subject matter jurisdiction," and we may look at materials "outside the pleadings" in conducting our review. [*Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc)] (quoting *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005)). Because of the "unique nature of the jurisdictional question," *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (citation omitted), it is the court's duty to "decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue," *id.* at 730. As such, if the court's inquiry extends beyond the pleadings, it is not necessary to apply Rule 56 summary judgment standards. *Id.* at 729. Rather, the court may receive evidence via "any rational mode of inquiry," and the parties may "request an evidentiary hearing." *Id.* at 730 (quoting *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)). Ultimately, the court must rule upon "the jurisdictional issue [unless it] is 'so bound up with the merits that a full trial on the merits may be necessary to resolve the issue.'" *Id.* (quoting *Crawford*, 796 F.2d at 928).

*Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019).

*2. Injunction to Prevent Transfer*

The Court first addresses Defendants' arguments against Chambers's injunctive relief request to prevent his transfer from the Lincoln Correctional Center. Although made separately, Defendants' mootness and standing arguments are interrelated. Mootness relates to whether a defendant has standing throughout the pendency of a case, and both mootness and standing implicate a court's jurisdiction. *See Sisney v. Kaemingk*, 15 F.4th 1181, 1194 (8th Cir. 2021). In essence, Defendants argue that Chambers's current incarceration at the Lincoln Correctional

7

Center means that he either lacks standing to pursue injunctive relief to prevent his transfer or that this request for injunctive relief is moot. Here, the Court finds that Chambers's failure to show a real and immediate threat of injury, a requirement to have standing to seek injunctive relief, *Brazil v. Arkansas Dept of Hum. Servs.*, 892 F.3d 957, 960 (8th Cir. 2018), sinks this injunctive relief request. Therefore, the Court lacks jurisdiction over this request for an injunction. *See City of Clarkson Valley v. Mineta*, 495 F.3d 567, 569 (8th Cir. 2007) (stating that "standing is a jurisdictional prerequisite").

"Article III of the Constitution requires the existence of a case or controversy at all stages of litigation." *Rivera v. Bank of Am., N.A.*, 993 F.3d 1046, 1049 (8th Cir. 2021). "To satisfy the case-or-controversy requirement, a plaintiff seeking injunctive relief to guard against future unlawful conduct must be under a 'real and immediate threat of injury.'" *Brazil*, 892 F.3d at 960 (quoting *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)). "A 'conjectural or hypothetical' possibility of future harm is insufficient." *Id.* (quoting *Lyons*, 461 U.S. at 102. Injunctive relief in the prison context involves special concerns. As the Eighth Circuit explained in *Rogers v. Scurr*,

> [J]udicial restraint is especially called for in dealing with the complex and intractable problems of prison administration. It is therefore all the more important that federal courts abstain from imposing strict standards of conduct, in the form of injunctions, on prison officials in the absence of a concrete showing of a valid claim and constitutionally mandated directives for relief. The courts should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate.

676 F.2d 1211, 1214 (8th Cir. 1982) (internal citation omitted). "[I]n the prison context, a request for injunctive relief must always be viewed with great caution . . . ." *Goff v. Harper*, 60 F.3d 518, 520–21 (8th Cir. 1995).

Thus, the question in this case is if Chambers can demonstrate a "real and immediate threat of injury" if he is transferred to the Nebraska State Penitentiary or TSCI to have standing to pursue

8

injunctive relief to prevent a transfer in the future. He cannot. First, as far as the Due Process Clause of the Fourteenth Amendment is concerned, merely transferring Chambers to the Nebraska State Penitentiary or TSCI would not violate Chambers's due process rights. *See Smith v. McKinney*, 954 F.3d 1075, 1079 (8th Cir. 2020) ("An inmate 'has no constitutional right to remain in a particular institution.'" (quoting *Askew v. Heflin*, 67 F.3d 303, 303 (8th Cir. 1995))). Instead, as the Court stated in its prior Order on Defendants' Motions for Summary Judgment, the due process inquiry focuses on the plaintiff's conditions of confinement after his or her transfer. *See id.* at 1083 ("[W]e must examine 'whether the conditions of [Smith's] confinement [in administrative segregation at the FDCF and] after his transfer [to the ISP] constituted a hardship that could reasonably be characterized as atypical and significant." (second, third, and fourth alterations in original) (quoting *Freitas v. Ault*, 109 F.3d 1335, 1337 (8th Cir. 1997))); *Freitas*, 109 F.3d at 1337 ("The appropriate inquiry is whether the conditions of Mr. Freitas's confinement after his transfer constituted a hardship that could reasonably be characterized as 'atypical and significant[.]'" (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995))). Chambers's confinement after transfer would have to impose "atypical and significant hardship on [Chambers] in relation to the ordinary incidents of prison life" to violate the Due Process Clause. *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). Here, Chambers has failed to show a "real and immediate threat" that a transfer to the Nebraska State Penitentiary or TSCI would impose an atypical and significant hardship on Chambers as contemplated by the Due Process Clause's protections. Without any showing from Chambers, the Court can only speculate as to the conditions under which Chambers would be confined. The wholly hypothetical future violation of Chambers's due process rights does not afford him standing to pursue injunctive relief to prevent his transfer. *See Brazil*, 892 F.3d at 960.

9

That leaves Chambers's claim that the Eighth Amendment supports an injunction against transferring him to the Nebraska State Penitentiary or TSCI. As an initial matter, the Court notes that Chambers fails to show any likelihood that he will be transferred in the future. Without a demonstration that there is a "real and immediate threat" that Chambers will be transferred, any supposed future harm is purely hypothetical. *See id.* Notwithstanding Chamber's failure to show the likelihood that he will be transferred, Chambers also does not establish a "real and immediate threat" to his rights under the Eighth Amendment if such a transfer were to occur. A violation of the Eighth Amendment's prohibition against cruel and unusual punishment requires that the inmate suffer "from a substantial risk of serious harm from other inmates." *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020) (quoting *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998)). In this case, Chambers asserts that D.S. and R.E. would pose a substantial risk of serious harm to him if he was transferred back to TSCI.[5] Again, this is entirely speculative. Both D.S. and R.E. are in segregated housing. There is no evidence that they could ever interact with Chambers if Chambers was transferred to TSCI. Also, simply because Chambers suffered one assault from unknown inmates at TSCI in the past does not establish a real and immediate threat of injury if he were transferred back to TSCI. *See Lyons*, 461 U.S. at 105 (being illegally choked by police officers in the past did not "establish a real and immediate threat" that plaintiff would be illegally choked in the future). Whether evaluated under the Due Process Clause or the Eighth Amendment, Chambers does not have standing to pursue an injunction to prevent his transfer from the Lincoln Correctional Center. Therefore, the Court lacks subject-matter jurisdiction over this request for injunctive relief. *See Mineta*, 495 F.3d at 569.

---

[5] Besides the allegation in his Amended Complaint that there are four associates of D.S. and R.E. at the Nebraska State Penitentiary, Chambers gives the Court no indication that he would be at a substantial risk of serious harm at the Nebraska State Penitentiary. The Court finds that any future injury to Chambers from a transfer to the Nebraska State Penitentiary is too speculative for standing purposes. *See Brazil*, 892 F.3d at 960.

### 3. Injunction Related to Chambers's Property

Defendants assert a separate jurisdictional issue with Chambers's request related to his stolen property. Defendants argue that the Court cannot order them to replace[6] Chambers's property because state sovereign immunity under the Eleventh Amendment limits injunctive relief against official-capacity defendants to prospective injunctive relief. Filing 153. The Court agrees.

The Eleventh Amendment of the United States Constitution shields states from suits brought by private individuals. *See McDaniel v. Precythe*, 897 F.3d 946, 951 (8th Cir. 2018). Nevertheless, under the *Ex Parte Young* exception, a private individual may sue a state official in his or her official capacity for "prospective injunctive relief." *Id.* at 951–52. Whether the *Ex Parte Young* exception applies requires evaluating "whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Id.* at 952 (alteration in original) (quoting *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002)). If the requested relief is not a request for prospective injunctive relief, this Court lacks subject-matter jurisdiction to entertain it. *See Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989)

---

[6] In its Order on Defendants' Motion to Dismiss, the Court characterized this request for injunctive relief as one to "return" Chambers's property. Filing 56 at 12. The Court repeated that characterization in its Order on Defendants' Motions for Summary Judgment. Filing 147 at 2, 20, 47. However, Chambers's Amended Complaint requests injunctive relief requiring Defendants to "replace" his stolen property. Filing 19 at 32. The Court will use that characterization when discussing whether Chambers is properly seeking prospective injunctive relief because that is what he pleaded.

That being said, even if the Court stuck with its characterization that Chambers was asking for the return of his property, this request for injunctive relief is still problematic. Simply put, there are no allegations in Chambers's Amended Complaint that Defendants were involved in depriving Chambers of his property. *See Keating v. Nebraska Pub. Power Dist.*, 660 F.3d 1014, 1017 (8th Cir. 2011) ("In addressing a procedural due process question, a court must first determine whether *state action* has deprived an individual of a protected property interest . . . ." (emphasis added)). Instead, Chambers alleges that other inmates stole his property. Moreover, Chambers has not made any allegations that Defendants have his property, such that withholding it from his violates his due-process rights. Chambers has failed to allege "an ongoing violation of federal law" to support an official-capacity claim that Defendants are depriving him of his property in violation of the Fourteenth Amendment's Due Process Clause. *See Church v. Missouri*, 913 F.3d 736, 747–48 (8th Cir. 2019) (outlining that an official-capacity suit requires the plaintiff to plausibly allege "[1] an ongoing violation of federal law" and that the plaintiff "[2] seeks relief properly characterized as prospective." (quoting *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011)). Thus, regardless of how the Court frames Chambers's injunctive relief request, it would fail.

("The Eleventh Amendment presents a jurisdictional limit on federal courts in civil rights cases against states and their employees.").

Chambers's injunctive relief request fails under this inquiry. To replace property, Defendants in their official capacities would have to pay for it "from public funds in the state treasury." *Serna v. Goodno*, 567 F.3d 944, 952 (8th Cir. 2009) (quoting *Nix*, 879 F.2d at 432). Such relief, which seeks monetary damages, is not "properly characterized as prospective." *See McDaniel*, 897 F.3d at 952. The Eleventh Amendment prohibits Chambers's request for injunctive relief to have Defendants in their official capacity replace his stolen property. Thus, the Court lacks subject-matter jurisdiction over this request for injunctive relief.

### C. Failure to State a Claim

Having concluded that the Court lacks jurisdiction to entertain Chambers's injunctive relief requests to prevent his transfer from the Lincoln Correctional Center and to replace his property, the Court addresses his remaining official-capacity claims. Chambers vaguely states in his Amended Complaint that Defendants' conduct is currently causing him irreparable injury under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. Filing 19 at 28–31. However, besides the two requests for injunctive relief outlined above, Chambers provides no further detail about what acts by Defendants are presently violating his constitutional rights. Defendants argue that Chambers has failed to allege that he is currently suffering from any type of harm warranting injunctive relief. Filing 153 at 20. The Court agrees.

Rule 12(c) of the Federal Rules of Civil Procedure provides, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(h)(2)(B) expressly recognizes that "[f]ailure to state a claim upon which relief can be granted," which is a defense that may be raised by pre-answer motion under

Rule 12(b)(6), also "may be raised . . . by a motion under Rule 12(c)." A court reviews a Rule 12(c) motion under the same standard that governs a Rule 12(b)(6) motion. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990); *accord* Spagna v. Phi Kappa Psi, Inc., 30 F.4th 710, 715 (8th Cir. 2022) ("We review the grants of motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) applying the same standard.").

> As to those standards,
>
> At this stage of litigation, [courts] accept as true the facts alleged in [the plaintiff's] complaint and grant all reasonable inferences in her favor, determining whether she pled "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955).

Spagna, 30 F.4th at 715. Further,

> "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." [Iqbal, 556 U.S. at 678]. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). We assess plausibility by "draw[ing] on [our own] judicial experience and common sense." Id. at 679, 129 S.Ct. 1937. Further, we "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010).

Haney v. Portfolio Recovery Assocs., L.L.C., 895 F.3d 974, 981 (8th Cir. 2016).

An official-capacity suit requires the plaintiff to allege that there is "[1] an ongoing violation of federal law" and that the plaintiff "[2] seeks relief properly characterized as prospective." Church, 913 F.3d at 747–48 (quoting *281 Care Comm.*, 638 F.3d at 632). In this case, Chambers's Amended Complaint is devoid of any "ongoing violation of federal law" perpetrated by Defendants. Instead, his Amended Complaint focuses on how Defendants allegedly

13

violated his constitutional rights by transferring him to TSCI, placing him in TSCI's general population unit, and failing to provide him medical treatment after inmates attacked him. *See generally* Filing 19. These past purported violations of Chambers's constitutional rights do not support his official-capacity claims. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (holding that official-capacity suits against state officials "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of [*Ex Parte Young*], however, to claims for retrospective relief."). Chambers's conclusory allegation that he is currently suffering from irreparable harm from Defendants' conduct fails to state an official-capacity claim against Defendants. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)). Accordingly, to the extent Chambers claims that Defendants are engaged in ongoing Constitutional violations, it fails to state official-capacity claims because his Amended Complaint lacks specificity and detail as to how Defendants are currently violating his constitutional rights.

### D. John Doe Defendants

Defendants have asked the Court to dismiss Chambers's failure-to-provide-medical-care claims against the five John Doe defendants because, over two years into this suit, Chambers has failed to identify or serve them. Filing 153 at 2–3 & n.5. For his part, Chambers offers no argument against dismissal of his claims against the John Doe defendants.

"On motion or on its own, [a] court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. "The case law is clear that [f]ictitious parties must eventually be dismissed, if discovery yields no identities." *McCrudden v. United States*, 763 F. App'x 142, 145 (3d Cir. 2019)

(quoting *Hindes v. FDIC*, 137 F.3d 148, 155 (3d Cir. 1998)) (alteration in original). District courts in the Eighth Circuit routinely dismiss unknown defendants if the plaintiff has not identified them at the close of discovery. *See, e.g.*, *Larson v. Carlton Cnty. Jail*, No. 17-CV-3551 (NEB/ECW), 2019 WL 4187839, at *1 (D. Minn. Sept. 4, 2019), *aff'd*, 810 F. App'x 489 (8th Cir. 2020); *Davidson v. Advanced Auto Parts Locator*, No. 406CV00607-ERW, 2007 WL 2317526, at *3 (E.D. Mo. Aug. 9, 2007).

Although the Court limited initial discovery to sovereign immunity, qualified immunity, and exhaustion, Filing 78 at 1, the identity of the John Doe defendants would have been at issue. Chambers failed to identify them by the close of that round of discovery. At this point, Chambers's remaining claims are against unknown defendants. Therefore, he has no ability via further discovery to learn their identities. *See Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) ("Dismissal [of an unknown defendant] is proper only when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention."). Moreover, as Defendants correctly point out, the time for service under Federal Rule of Civil Procedure 4(m) has run. Filing 153 at 3 n.5; Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."). Therefore, the Court will dismiss Chambers's claims against the John Doe defendants without prejudice.

## IV. CONCLUSION

The Court lacks subject-matter jurisdiction over Chambers's requests for injunctive relief, and to the extent he has any further claims against Defendants in their official capacities, his Amendment Complaint fails to state a claim. Accordingly,

IT IS ORDERED that Defendants' Motion for Judgment on the Pleadings, Filing 152, is granted, and Chambers's official capacity claims and his claims against the John Doe defendants in their individual capacities are dismissed.

IT IS FURTHER ORDERED that judgment shall enter in accordance with the prior ruling granting summary judgment.

Dated this 15th day of December, 2022.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge